SCOTT v. GEORGE'S CREEK COAL & IRON CO.

(District Court, D. Maryland. January 30, 1913.)

1. BANKRUPTCY (§ 292*)—JURISDICTION OF COURT—CONTROVERSY BETWEEN CITIZENS OF DIFFERENT STATES.

Where a general assignee in bankruptcy for a district of ·New York under the Bankruptcy Act of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 440) brings an action in the United States District Court for the district of Maryland against a Maryland corporation, which prior to the bankruptcy had issued stock to the bankrupt in trust for relief based on such stock, and there is no necessity for the interference of the court to protect the assignee in bankruptcy from any injustice or oppression, the court will assume jurisdiction only as it may be exercised over a controversy between citizens of different states.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 410, 413, 415, 416; Dec. Dig. § 292.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. ABATEMENT AND REVIVAL (§ 12*)—STATE AND FEDERAL COURTS—CONCURRENT JURISDICTION.

The mere pendency of a suit in a state court does not bar the institution of a subsequent suit in a federal court involving the same subject-matter and between the same parties.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98; Dec. Dig. § 12.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 296*)—STATE AND FEDERAL COURTS—CONCURRENT JURISDIC-
TION.

Where a suit in a state court by stockholders for the dissolution of a
domestic corporation and the distribution of its assets, and the appoint-
ment of receivers to take charge of the assets and wind up the affairs of
the corporation, was under the law, as laid down by the Supreme Court,
a suit in rem, so that the state court acquired jurisdiction over the
assets on the filing of the bill and the issuance and service of process
thereon, the District Court of the United States in the state would not
proceed in a subsequent suit by an assignee in bankruptcy under the
Bankruptcy Act of 1841 of a bankrupt stockholder for relief based on
the bankrupt's stock until the proceeding in the state court should be
terminated, so far as the same referred to the stock of the bankrupt,
but, after the termination of the litigation to that extent, the assignee
could file an amended bill alleging that fact; the District Court reserving
to itself the right to determine whether the litigation in the state court
had terminated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 414; Dec.
Dig. § 296.*

Conflict of jurisdiction with state courts, see note to Louisville Trust
Co. v. City of Cincinnati, 22 C. C. A. 356.]

In Equity. Suit by William Forse Scott, official or general assignee
in bankruptcy for the Southern district of New York under the Bank-
ruptcy Act of August 19, 1841, as assignee in bankruptcy of Tilly Al-
len, bankrupt, against the George's Creek Coal & Iron Company. Pro-
ceedings in suit suspended pending proceedings in the state court.

Leigh Bonsal, of Baltimore, Md., for complainant.
Shirley Carter, of Baltimore, Md., for defendant.

ROSE, District Judge. Under the Bankruptcy Act of 1841 (Act
Aug. 19, 1841, c. 9, 5 Stat. 440) the complainant is the general assignee
in bankruptcy for the Southern district of New York. He sues as
assignee in bankruptcy of one Tilly Allen. The defendant is the
George's Creek Coal & Iron Company, a Maryland corporation. The
bill was filed September 9, 1912. It alleges that on March 22, 1841,
certificates for 58 shares of the stock of the defendant corporation
were issued to Tilly Allen in trust. A year later, on the 21st of March,
1842, he was adjudicated a bankrupt. He did not include this stock
in his schedule of assets. The bill charges that the bankrupt had the
equitable as well as the legal title to it. At the time of the
bankruptcy the stock was probably not worth over $780. Until 1864
the company never paid a dividend. Since then it has been prosperous.
It has distributed among its stockholders many cash dividends, in addi-
tion to a stock dividend of 100 per cent. Until recently no one has
ever claimed the dividends payable on the stock standing in the name
of the bankrupt in trust. Upon the books of the company the stock
dividend was duly issued to Tilly Allen in trust. The defendant com-
pany has sold its tangible assets to another corporation and has taken
the securities of such other corporation in payment. The accumulated
dividends on the stock standing in the name of the bankrupt in trust
amount to $20,952.50, and the owner of those shares of stock is en-
titled to securities of the vendee corporation of the value of about $14,-

236.35.  Complainant says that it was only within the last few months that the facts have come to his knowledge.  Since then he has made demand upon the defendant for the stock or its value, and for all accumulated dividends and other property resulting from the sale of said stock by the defendant, but that the latter has declined to hand over the stock or the money or any part thereof.  The bill prays that the defendant be required to issue a new certificate to the complainant in lieu of the one formerly issued to Tilly Allen in trust, which last-mentioned certificate is said to have been lost, and to account for and pay over to the complainant all accrued dividends thereon and all securities,. moneys, and other property received by the defendant on account thereof, with interest thereon and the income thereof, and for a provisional or preliminary injunction restraining the defendant from transferring, assigning, or disposing of the stock and its proceeds pending a determination of the cause.

By plea the defendant challenges the jurisdiction of this court in the premises.  Such plea says that on October 9, 1911, in the circuit court of Baltimore city, one of the equity courts of the state of Maryland, certain stockholders of the defendant filed a bill against the defendant and its directors.  They asked the state court to assume jurisdiction over the dissolution and liquidation of defendant and that it would appoint receivers to take charge of and distribute the assets of the defendant and to wind up its affairs.  Among other funds which the bill specially prayed the state court to take jurisdiction over, and for which it was asked to appoint a receiver, was the stock standing in the name of Tilly Allen in trust and the dividends and proceeds thereof.

The plea further alleges that the defendant had answered said last-mentioned bill, and had submitted itself to the jurisdiction of said state court with respect to all its assets, including the stock and proceeds mentioned in the bill of complaint in this cause.  The defendant is now subject to the orders and decree of such court with respect to the same; the cause therein being still pending and undisposed of.

The complainant set the plea down for a hearing.  By mutual consent a certified copy of the bill of complaint, the answer, and the docket entries in the state court suit was read at the hearing.  It is to be treated as if it were a part of the plea.

The complainants in the state court say that they were the owners of 2,640 shares out of the 22,000 shares of the capital stock of the defendant.  They allege that the directors were under the laws of Maryland taking certain proceeding looking to the dissolution of the corporation otherwise than by judicial proceedings.  A partial distribution of the defendant's assets had been made among its stockholders.  Certain sums of money still remained in the hands of the directors, acting as trustees for the creditors and stockholders of the corporation.  These sums awaited distribution among the persons entitled thereto.  One specifically mentioned was that standing in the name of Tilly Allen in trust.  It is said that the defendant's directors have delayed and were still delaying its final dissolution and the distribution of its assets among its stockholders; that such delay was

caused by the unclaimed sum of money aforesaid, and by some other unclaimed sums arising out of somewhat similar cases; that, in addition to the unclaimed sums of money representing the Tilly Allen and other stock, the directors have in their hands about $25,000, which could and should be speedily distributed among the defendant stockholders. The state court bill prayed the court to assume jurisdiction over the dissolution and liquidation of the defendant company. It asked for the appointment of receivers to take charge of and distribute its assets, and to wind up its affairs, and for general relief.

The answer of the defendant and its directors was filed November 20, 1911. It denied that they had taken any proceedings for the dissolution of the defendant corporation. It admitted that the latter had converted most, if not all, of its property into cash, and had distributed all the proceeds of sale, with certain exceptions, among those entitled to receive the same. The defendants had not been able to distribute about $60,000 in money, bonds, and scrip to which shares of stock standing in the name of one Morris Robinson, agent, were entitled, nor $35,188.85 in money, bonds, and scrip to which the shares of stock standing in the name of Tilly Allen in trust were entitled, because they had not been able to ascertain who had a rightful claim to such sums of money.

It further said that there was no necessity for the appointment of a receiver; that the work of distributing the funds of the defendant corporation might be done under the direction of the court by the defendant and their fiscal agents as well as it could possibly be done by receivers and much more cheaply. The defendants in their answer said that they would present to the court a statement of the proceedings which in their judgment should be taken to ascertain what disposition should be made of the money, bonds, and scrip now in the hands of the defendant corporation standing in the name of Tilly Allen in trust.

Nothing has been done in the state court since the filing of defendant's answer. Certain allegations in the answer doubtless explain this delay. The answer says that an administrator c. t. a. of Tilly Allen, and a receiver appointed at the instance of such administrator, was seeking by certain litigation in the state courts to obtain possession of said sums of money, bonds, and scrip, and had prayed therein for the appointment of a receiver for the proceeds of the stock standing in the name of Tilly Allen. The answer alleged that the pendency of this latter proceeding was a conclusive reason why in the stockholders' suit no receiver should be appointed for the proceeds of such Allen stock.

It was in the case of Baltimore Trust Company, Receiver, v. George's Creek Coal & Iron Company that the administrator of Tilly Allen sought to obtain possession of the stock standing in the name of Tilly Allen in trust and its proceeds. Counsel on both sides stated to the court that on the 20th of November, 1912, the Court of Appeals of Maryland handed down an opinion in such case. 85 Atl. 949. It held that the administrator of Tilly Allen

was not as of right, and in the absence of any showing as to the character in which Allen held such stock, entitled to its possession.

In the case at bar the bill shows that the controversy involved more than $3,000 and is between citizens of different states. At the hearing it was assumed by everybody that the jurisdiction of this court was invoked upon those allegations, and upon those alone. It was taken for granted that as to the matters in dispute this court and the state court were of concurrent jurisdiction. That they certainly are, if the present case is here solely because the parties to it are citizens of different states. That, moreover, under the present Bankruptcy Act, they would be, if this court, under that enactment, would have any jurisdiction at all. The plaintiff is, however, an assignee under the Bankruptcy Act of 1841. Its repeal did not affect any case or proceeding in bankruptcy commenced before the passage of the repealing act. By the latter enactment it was expressly provided that every such proceeding should be continued to its final consummation in like manner as if the original act had never been repealed. Act March 3, 1843, c. 82, 5 Statutes at Large, 614.

[1] Under the Bankruptcy Act of 1841, as under that of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), the jurisdiction of the federal courts was much wider than it is under the act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). In some cases in which they now have no jurisdiction at all, or a jurisdiction concurrent with that of the state courts, their jurisdiction was then paramount to that of any state tribunal. Ex parte Christy, 3 How. 292, 11 L. Ed. 603; Traders' Bank v. Campbell, 14 Wall. 95, 20 L. Ed. 832.

There is, however, some doubt whether the powers given by the acts of 1841 or 1867 could be exercised by any federal court, except that of the district in which the adjudication was made. There are decisions either way. Jobbins v. Montague, 13 Fed. Cas. 648; Goodall v. Tuttle, 10 Fed. Cas. 579; Sherman v. Bingham, 21 Fed. Cas. 1270; Ex parte Martin, 16 Fed. Cas. 874.

If, in deference to the great authority of Justices Story and Clifford, it should be held that the earlier acts did give to a federal court in one district jurisdiction over certain classes of suits brought by an assignee in bankruptcy appointed in another district, it would still be necessary to inquire whether this is a suit brought against one claiming an adverse interest in property which is the occasion of the litigation. If it is, it would seem that the act of 1841 does not give jurisdiction to this court. Act 1841, § 8; Clifford, Circuit Justice, in Sherman v. Bingham, 21 Fed. Cas. at page 1273.

It will not be necessary to go into any of these niceties. It will serve no good purpose to inquire whether in view of the decision in Peck v. Jenness, 7 How. 612, 12 L. Ed. 841, and of the comments of the court in Carroll v. Carroll, 16 How. 275, 14 L. Ed. 936, and in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44

L. Ed. 1175, much that was said in Ex parte Christy, supra, as to the extent of the jurisdiction of a court of bankruptcy, is still law. Even in that case Justice Story, speaking for the court, said:

"That because the District Court does possess such a jurisdiction under the act, there is nothing in the act which requires that it should in all cases be absolutely exercised. * * * The prosecution or defense of any such suits in the state courts is obviously intended to be placed under the discretionary authority of the District Court."

There is, to say the least, grave doubt whether the act of 1841 gives to this court any jurisdiction over the present controversy. If it does, the authorities show that it is discretionary with this court whether such jurisdiction shall under the circumstances be exercised. It does not appear that there is any necessity for the interference of this court to protect the assignee in bankruptcy from any injustice or oppression.

In view of all the circumstances, this court will therefore not assume any jurisdiction other than that which it may and should exercise over a controversy between citizens of different states.

[2] The mere pendency of another suit in the state court over the same subject-matter, even if the parties were the same, would be no bar to the institution of a subsequent suit in a federal court. Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383.

[3] Complainant says that in Maryland it is well settled that property may be seized by one court even after the appointment of a receiver for the same property by another court of concurrent jurisdiction, provided such seizure is made before the receiver takes possession of the property so seized. Farmers' Bank of Delaware v. Beaston, 7 Gill & J. (Md.) 421, 28 Am. Dec. 226; Everett v. Neff, 28 Md. 176.

It is unnecessary to comment on these authorities or to inquire whether they can be distinguished from the case at bar. Whether a federal court of equity is entitled to take jurisdiction under circumstances such as those disclosed by the pleadings is a question upon which the rulings of the Supreme Court are conclusive.

The proceeding in the circuit court of Baltimore city was in rem, as those words are used by the Supreme Court in Farmers' Loan & Trust Co. v. Lake Street Elevated Railroad Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. In the bill of complaint in the state court the specific fund here in controversy was mentioned. That court was asked to take such fund into its custody through its receiver and to determine who was entitled to it. The parties to the cause in this court are not the same as the parties in the state court, but the fund and securities in controversy are precisely the same. As I understand the decision of the Supreme Court, the jurisdiction of the circuit court of Baltimore city over the thing in controversy attached when the bill was filed therein and process issued thereon, such process having been subsequently duly served. Until the proceedings in the state court are terminated this court should not attempt to take the property there in controversy into its custody either directly, or indirectly through injunctions which restrain the person who

has actual possession from disposing of that possession otherwise than is directed by this court.

At the hearing complainant said that, if this court was of opinion that it had no right to issue the writ of injunction prayed for, he would ask leave to amend his bill by striking therefrom the prayer for a provisional or preliminary injunction, and that the prayer that the defendant be required to issue a new certificate of stock to the complainant and to account for and pay over to the complainant all accrued dividends thereon and other proceeds thereof should be amended by adding thereto:

"That in said decree there shall be nothing contained which would interfere with the custody by any receiver of the certificates of stock standing in the name of Tilly Allen in trust and the property belonging thereto, if hereafter appointed by the circuit court of Baltimore city in the case of Montell and Others v. George's Creek Coal & Iron Company."

In Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, the Supreme Court said that the possession of property by one court carried with it the exclusive jurisdiction to determine all judicial questions concerning such property. Such conclusion was adhered to on a motion for rehearing. 208 U. S. 609, 28 Sup. Ct. 425, 52 L. Ed. 642. The court then declared:

"That the declaration of a lien on the property is a step towards the invasion of its possession, which we have held to be beyond the jurisdiction of the state court."

Unless this court can adjudicate the plaintiff's title to the fund and securities in controversy, it can do nothing which will be of any advantage to him. Whatever amendment he may make to his bill, its prayer will still in effect be that this court shall declare that such fund and securities belong to him. The state court has taken that property into its custody for the purpose, among others, of deciding who is entitled to it. That court, having the possession of the thing in controversy, can not only decide the case before it, but is in a position to enforce its decree.

Under such circumstances this court will best show its respect for another court of concurrent jurisdiction and for its own dignity by declining to proceed further with this case until the proceedings in the state court shall be terminated.

It remains merely to inquire what order should be made. This court would ordinarily have jurisdiction to adjudicate the controversy between the parties to this cause. The defendant has set up in its plea certain facts which show that such adjudication should not now be made—not necessarily that it should never be made. The proceedings in the state court may continue for some time. They may ultimately end in such manner as to leave the complainant free to prosecute his suit in this court, if he shall then be so advised. The ends of justice will be best subserved by decreeing that no further proceedings shall be taken in this cause until the litigation in the state court, set up in defendant's plea, has been terminated, so far as the same has reference to the certificates of stock standing in the name of Tilly Allen in trust or the proceeds thereof, and that after the

termination of such litigation, so far as it relates to such certificates of stock and their proceeds, the complainant may have 30 days to file an amended bill of complaint alleging that such litigation is at an end. This court should reserve to itself the right to determine, by an order to be entered at the foot of the decree to be now passed, or otherwise, whether the litigation in the state court with reference to such certificates of stock and the proceeds thereof has been ended, within the meaning of the decree to be passed herein.